Betty L. SMITH, Respondent,

v.

Johnny S. SMITH, Appellant.

No. KCD 28610.

Missouri Court of Appeals, Kansas City District.

Jan. 30, 1978.

Snowden, Crain & DeCuyper, Joseph Y. DeCuyper, Hsiang-Lin Lee, Kansas City, for appellant.

Arthur R. Kincaid, Vincent F. Igoe, Jr., Liberty, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Dissolution of marriage proceeding. Trial court entered decree of dissolution as prayed for by wife as petitioner, divided marital property, gave wife allowance for maintenance and ordered husband to make payments for support of minor children. Husband has appealed.

Betty L. Smith and Johnny S. Smith were married December 31, 1951. Four children were born to the marriage, Stephen L. Smith born April 24, 1954, Johnny M. Smith born September 16, 1955, Jeffrey W. Smith born April 26, 1958, and Roger A. Smith born December 6, 1972. A child of Betty, Jack L. Smith, was adopted by Johnny and was an adult.

The wife's petition, filed May 12, 1975, alleged that the marriage was irretrievably broken. The husband's answer denied that allegation and requested the court to enter an order requiring counseling. § 452.320 2. (2), RSMo 1975 Supp. (All references herein to statutes are to that compilation.) The petitioner's reply reaffirmed her allegation that the marriage was irretrievably broken and the respondent reasserted his denial.

The matter was heard December 8, 1975. The wife testified that her husband had on occasion struck her and threatened her with physical injury. She said that she had previously filed for divorce in August, 1973 and moved out of the family residence after threats of violence. The proceeding was dropped and she returned when her husband agreed to seek counseling and they did so, but he decided that there was nothing wrong with him and that counseling was pointless. The wife continued to seek counseling, but she "finally recognized there simply wasn't any hope as far as I was concerned that he would ever change and I could not live the way we had been living * * * ."

The husband testified that he did not want the marriage dissolved because he believed his " * * * wife is under some sort of a problem with her health and it's affecting her judgment on certain matters of emotion." He stated that he would like to go to counseling. He said that in the preceding four years, his wife's behavior had changed markedly. She stopped preparing meals, became a "lousy" housekeeper and failed to keep herself clean. He denied that he had quit the counseling service, saying that his wife had quit first.

At the conclusion of the husband's testimony, his counsel stated that the husband was still "greatly desirous of trying to save his marriage * * * . If, however, the Court does find this marriage is irretrievably broken, Mr. Smith would then ask there be a legal separation entered instead of a Dissolution of Marriage at this time." The husband repeated this request at a further hearing some ten days later.

■ The trial court found that the marriage had been irretrievably broken and entered a decree of dissolution. On this appeal, the first contention of the husband is that, by reason of the provision of Section 452.305 2., the trial court, upon his request for a decree of legal separation, was obliged, upon finding that the marriage was irretrievably broken, to enter a decree of legal separation rather than dissolution of the marriage. Section 452.305 2. provides: "If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form."

This question was before the court in *McRoberts v. McRoberts*, 555 S.W.2d 682 (Mo.App.1977). In that case, the wife as respondent in dissolution proceedings prayed for a decree of legal separation. The court held that, in view of the provisions of Section 452.305 2., the trial court was required to grant the relief requested by the wife. There is no need to repeat the reasoning that led to that conclusion. Highly persuasive was the fact that, in the enactment of Section 452.305, the legislature changed the language of the Uniform Marriage and Divorce Act by deleting at the end of the provision the language "unless the other party objects."

■ Respondent here suggests that the party referred to in Section 452.305 2. should be held to be the party filing the

petition. Nothing in the language of the statute or its history supports this contention. Respondent does not suggest that the failure of the husband to make his request in his pleading precluded the relief. *McRoberts* requires the reversal of the decree of dissolution and substitution of a decree of legal separation.

Inasmuch as upon legal separation, the court was empowered to divide the marital property (§ 452.330), enter an order for maintenance (§ 452.335) and for child support (§ 452.340), appellant's assignments of error on those matters must be considered.

Appellant's first complaint on this score relates to a tract of land in Tulsa, Oklahoma, valued by the husband at about $30,000 and the wife at $23,500, which the trial court ordered to be taken by the wife "as her sole and separate property."

The property in question had been received by the wife and her brother as joint owners by either gift or inheritance from their mother. The Smiths purchased the brother's share for $3,000. According to Mrs. Smith, she received $1,500 "cash settlement out of her father's death" and that sum was applied to the purchase of her brother's share. The other $1,500 was paid from the parties' joint bank account. Mr. Smith claimed that the entire $3,000 came from that source. According to Mrs. Smith, the property was held in the joint names of the parties. "A couple of years ago my husband very pointedly requested that I have his name added to the title of it because he felt that if anything should happen to me that he didn't want it to go to any of my family."

Appellant argues that, under *Conrad v. Bowers*, 533 S.W.2d 614 (Mo.App.1975), the fact that the property was jointly held makes it marital property in these circumstances unless it is shown by clear and convincing evidence that the transfer to the parties jointly was not intended as a gift to the husband. This contention is supported by *Conrad v. Bowers*, supra. Respondent's answer is premised largely upon disagreement with the reasoning and result of the majority in *Conrad v. Bowers*. She relies

upon the reasoning of the concurring opinion in *Conrad* of Judge McMillian, which disagreed with the majority on the issue here involved, i. e., the effect of a transfer to joint ownership by husband and wife of property which might otherwise have been separate property. This court has followed the reasoning and result of the majority in *Conrad v. Bowers*. See *Forsythe v. Forsythe*, 558 S.W.2d 675 (1977); *Vadnais v. Vadnais*, 558 S.W.2d 249 (1977).

Respondent's statement that she transferred the property to her husband and herself as joint owners at his request does not rebut the presumption of gift to the husband in this case. Therefore, the trial court erroneously considered the Tulsa property the wife's separate property. The question remains whether or not, as argued by respondent, the allocation of the property to respondent can be sustained on the grounds that she contributed the major share toward the acquisition of the property. This question must be considered in the light of the over-all division of marital property to which appellant objects as "unconscionable." He also applies the same objection to the allowance for maintenance.

The marital property and the division made by the court were as follows:

1. The parties owned a four-bedroom residence purchased for $26,300 around 1967. The house, valued by the parties at from $38,000 to $45,000 at the time of trial, was subject to a mortgage on which some $16,500 remained unpaid. The house was ordered held in the joint names of the parties until the child Roger, then three years old, was emancipated or reached his majority or the respondent remarried, whichever occurred first. Upon such occurrence, the property was ordered to be sold, with $10,000 of the proceeds of the sale to be paid to the husband. The wife and children were to be permitted to live in the home until its sale. The wife was made responsible for paying the encumbrance, maintenance, taxes and insurance on the property.

2. Household furnishings, valued at $1,500 were awarded to wife.

3. Wife was awarded 1973 Vega and 1969 Pontiac autos and husband a 1974 Pontiac.

In addition the wife was awarded alimony in gross of $3,000, payable $100 per month. Child support payments for the minor children of $350 per month, payable by the husband, together with an obligation upon him to maintain health and accident and hospitalization insurance on the children until they reach the age of 23 years, are not questioned. The wife was also given $750 attorney's fees.

The husband was an employee of the United States Weather Service, with a take-home pay of approximately $1,266 per month. The wife had been employed for two years by the Liberty Hospital as a laboratory technician, with a take-home pay of $512 per month. Mrs. Smith estimated that the cost of her operation of the household with the three children would be approximately $933 per month. She stated in detail the items making up that amount.

Appellant argues that the trial court's division of the property gave the respondent property valued at between $39,000 and $50,000, whereas he receives only $10,-000 in the future and an automobile.

■ It is now well established that the marriage dissolution law does not require an equal division of the marital property. What is required is a fair and equitable distribution to be weighed in the light of the non-exclusive factors enumerated in Section 452.330 1. _C__ L__ R__ v. L__ B__ R___, 555 S.W.2d 372, 375[3] (Mo. App.1977).

■ As above noted, the trial court erroneously considered the Oklahoma property respondent's sole property. However, such error does not necessarily invalidate the trial court's conclusion if the court ultimately reached a correct result. _C__ L__ R__ v. L__ B__ R___, supra [1].

As respondent points out, insofar as the Oklahoma property was concerned, the respondent may be considered to have made the major contribution to the acquisition of that particular property, since she acquired one-half interest in it by gift and provided one half of the price of the other one-half interest. § 452.330 1. (1). However, that tract cannot be viewed separately insofar as the present argument is concerned, but must be viewed as one item in the total picture.

■ The evidence showed that approximately $10,000 had been paid toward the purchase price of the family residence, apparently from appellant's earnings. It had increased in value since its purchase from the $26,300 purchase price to a minimum of $38,000. Section 452.330 1. (3) recognizes "the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children * * *," in this case respondent. The device here employed with respect to the family home is one means of accomplishing this end. See _In re Marriage of Heddy_, 535 S.W.2d 276, 280 (Mo.App. 1976).

■ Appellant's monetary contribution toward the purchase of the house as well as his one-fourth share of the Oklahoma property, would be subject to offset for respondent's contribution "as homemaker." § 452.330 1. (1). Her duties in that regard were somewhat more onerous than usual because the first son born to the marriage, Stephen, was born with an opening in his spine, resulting in his having limited mental capacity and no control over his bladder and bowels.

As above noted, appellant's "economic circumstances" (§ 452.330 1. (3)), insofar as earning capacity was concerned, were superior to those of respondent. Her efforts to improve her potential earning power by further education had been thwarted by her pregnancy with the couple's youngest son.

Finally, appellant's "conduct during the marriage" (§ 452.330 1. (4)) may be considered a negative factor in the division of the property, in view of the respondent's testimony to his physical mistreatment of her.

Taking into consideration the factors above mentioned which weighed against equality in the division of the property, the

result reached by the trial court, even when the Oklahoma property is considered marital property and also considering the $1,500 household goods awarded the wife, is not inappropriate and cannot be said to be contrary to law or lacking in evidentiary support. See *Halbrook v. Halbrook*, 557 S.W.2d 45 (Mo.App.1977).

█ Appellant suggests that his share of the proceeds of the sale of the residence should be as awarded in *Ortmann v. Ortmann*, 547 S.W.2d 226, 230[6] (Mo.App.1977) where the court held that the husband's share upon sale of the residence should be measured as a percentage of the net sale proceeds, rather than a lump sum. See *Klinge v. Klinge*, 554 S.W.2d 474, 477[3–5] (Mo.App.1977). In accordance with that holding, the decree should be amended to provide that, in lieu of $10,000 upon sale of the residence, the appellant shall receive 35% of the net proceeds. Such allocation recognizes appellant's contribution to the purchase price of the property.

█ Appellant also attacks the award of maintenance to the respondent. However, his attack does not demonstrate an abuse of discretion by the trial court. Appellant ignores the wife's testimony as to her expenses in the maintenance of the household. She testified to expenses totalling $933.85 per month. Considering the allowance for support of the children, she anticipated that she would have $862 per month income. In the division of marital property, no income-producing property is given the wife. That factor distinguishes this case from *In re Marriage of Neubern*, 535 S.W.2d 499 (Mo. App.1976), the sole authority cited by appellant in support of his contention that the maintenance award is "unconscionable." In *Neubern*, the wife was awarded a liquor business in which she had worked during the marriage and which provided her a source of income. That case is not authority for concluding that the trial court's maintenance order is this case was an abuse of discretion. Appellant has not carried his burden of demonstrating that the maintenance award in the case was an abuse of discretion on the part of the trial court.

The decree of dissolution of marriage is set aside and the cause remanded with direction to enter a decree of legal separation. The decree shall also be amended to provide that, upon sale of the residence at 603 Glendale, Liberty, Missouri, "Petitioner shall pay to Respondent 35% of the net proceeds of said sale," rather than the sum of $10,-000.00. Otherwise the decree is affirmed.

Affirmed in part; reversed and remanded, with directions in part.

All concur.