In re the MARRIAGE OF Otho S. PATE, Petitioner-Respondent,

and

Sue V. Pate, Respondent-Appellant.

No. 30416.

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Joseph Y. DeCuyper, Hsiang-Lin Lee, Snowden & DeCuyper, Kansas City, for respondent-appellant.

William E. Shull, Gettig, Coulson & Shall, Stephen V. Crain, Kansas City, for petitioner-respondent.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

SWOFFORD, Judge.

This case involves an action brought by the respondent-husband (petitioner below) for dissolution of his marriage with the appellant-wife (respondent below) in which he alleged that the marriage was irretrievably broken and there was no likelihood that it could be preserved. The wife by her verified answer denied that there was no reasonable likelihood that the marriage could be preserved and denied the marriage was irretrievably broken, and asked that the husband's petition be dismissed or, in the alternative, that the court enter a decree of legal separation, divide the marital property, and award her reasonable maintenance and attorney's fees. No children were born of this marriage.

Upon these pleadings the evidence was heard and the trial court, after making extensive findings of fact and conclusions of law, decreed that the marriage was irretrievably broken and entered a decree of legal separation under the wife's alternative request, and awarded the wife $48,000.00 in cash and a 1976 Suburban motor

car and a 1973 Airstream house trailer valued at $11,000.00 as her share of the marital property. The decree did not award her any maintenance or attorney's fees. The appellant-wife raises on this appeal four assignments of error, namely: (1) that it was error for the court to decree that the marriage was irretrievably broken and that there was no reasonable likelihood that it could be preserved; (2) the trial court erred in failing to include certain certificates of deposit purchased from funds in a joint checking account as part of the marital property; (3) the trial court erred in not providing her with separate maintenance under the terms of § 452.335 RSMo 1978; and (4) the court erred in finding that the appellant-wife had sufficient funds to pay her own attorney's fees.

The appellant's Point I as it appears would seem to be based upon a position that the evidence did not support the finding in the court's decree that the marriage was irretrievably broken with no reasonable likelihood that it could be preserved. However, it is clear from the argument portion of the appellant's brief that her real complaint is based upon the failure of the judgment and decree to specifically find the existence of one of the five elements upon which the court must be satisfied under the terms of § 452.320 RSMo 1978 before a finding and decree that the marriage is irretrievably broken is authorized.

Pertinent to this point is § 452.305 RSMo 1978, which provides in part:

"1. The circuit court shall enter a decree of dissolution of marriage if

\*　　\*　　\*　　\*　　\*　　\*

(2) The court finds that there remains no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken; and

\*　　\*　　\*　　\*　　\*　　\*

2. If a party requests a legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form."

Under § 452.305(2), quoted above, it was held that where a request by a husband in response to his wife's petition for dissolution was to grant a legal separation, the court was obliged to grant the decree in that form upon finding that the marriage was irretrievably broken. *Smith v. Smith*, 561 S.W.2d 714, 716–717[1, 2] (Mo.App. 1978); see also, *McRoberts v. McRoberts*, 555 S.W.2d 682, 683[1] (Mo.App.1977).

So here the wife's alternate request that she be granted a decree of legal separation, both under the express terms of the statute and subsequent decisional law, as declared in *Smith v. Smith*, supra, and *McRoberts v. McRoberts*, supra, required that the decree in the case at bar take the form of a decree of legal separation upon a finding that there was no reasonable likelihood that the marriage could be preserved and that the marriage was irretrievably broken. This brings to focus in this case the terms of § 452.320 RSMo 1978, which provides in pertinent part:

"\*　　\*　　\*

2. If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation, and after hearing the evidence shall

(1) *Make a finding* whether or not the marriage is irretrievably broken and in order for the court to find that the marriage is irretrievably broken, the petitioner *shall satisfy the court* of one or more of the following facts: (Emphasis added)

\*　　\*　　\*　　\*　　\*　　\*

(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

\*　　\*　　\*　　\*　　\*　　\*

See *Gummels v. Gummels*, 561 S.W.2d 442 (Mo.App.1978).

(Subparagraphs (a), (c), (d) and (e) of this statute have no relevancy to the case at bar and are therefore not set out herein.)

It is apparent from this record that the court below did not specifically set out in its findings of fact, conclusions of law, or decree, a finding containing the specific wording of § 452.320–2(1)(b) as set forth above. While it appears from the record that the parties both submitted requested findings of fact and conclusions of law, such are not included in the transcript, so this Court is without information as to whether the court below was requested to specifically find that it was satisfied that the appellant-wife had behaved in such a way that the respondent-husband could not reasonably be expected to live with her. Such being the state of this record, this Court cannot gauge the effect, if any, of Rule 73.01(2)(a) in this case.

So far as this Court is concerned, it is still an open question as to the legislative intent and the meaning of § 452.320–2(1), except that it is mandatory that the trial court find, as an ultimate fact, that the marriage is irretrievably broken after considering all relevant factors and in so doing be "satisfied" of one or more of five areas of fact set out in § 452.320–2(1)(a–e). In this case, this state of "satisfaction" needed to be reached, that the husband could not reasonably be expected to live with the respondent. This Court refuses to hold that the statute requires the trial court to find each and every relevant factor separately that leads it to the conclusion that the parties could not reasonably be expected to continue living together as husband and wife. Without engaging in a debate of semantics it would appear that the Legislature intended that some distinction be applied to the terms "make a finding" and "satisfy the court" but that problem demands no solution here and this Court does not undertake to do so. This Court concludes, however, that it is not an unusual or burdensome requirement that the court specifically make a finding in this case of the *preliminary* conclusion that the respondent could not reasonably be expected to continue living with the appellant, a conclusion amply and convincingly supported by the evidence.

This requirement here directly ruled, was adopted by the Eastern District of this Court, perhaps by way of dictum, in the case of *In re Marriage of Capstick*, 547 S.W.2d 522, 523[1, 2] (Mo.App.1977).

Our task in this area is to review the record and judgment to ascertain whether the *ultimate* finding that the marriage was irretrievably broken was supported by substantive evidence. In so doing, we proceed within the limitations placed on such review by Rule 73.01 V.A.M.R., and *Murphy v. Carron*, 536 S.W.2d 30, 31[1–3] (Mo. banc 1976), and subsequent decisions.

When so viewed, the evidence clearly, by substantial evidence, established the following facts [1]:

The marriage here involved was solemnized on June 17, 1969 (F.F. No. 1) and the parties separated June 11, 1977 (F.F. No. 6). At the time of the trial, the husband was 72 years of age and the wife was 55 years of age (F.F. No. 7). At the time of the marriage the husband was a part-time practicing medical doctor with an income of approximately $10,000.00 per year (F.F. No. 12). Formerly, he had engaged in the active practice of medicine and had also held the office of Coroner of Clay County and Medical Director for North Kansas City, Missouri. The limitation of his practice was occasioned by his age and health.

At the time of the marriage the wife was employed as a fund raiser for the Kansas City Chapter of the American Heart Association and was earning approximately $8,500.00 per year, plus expenses (F.F. No. 13). Prior to her work for the Heart Association, she was Program Director for the local branch of the American Cancer Society. Other than in that line of work she had no special skills or training. Her health was good except for high blood pressure, for which she took medication.

The husband was suffering from a heart condition and was taking medication in 1977 (F.F. No. 10). This heart condition first developed in 1943–1944 and during a vaca-

1. Many of these facts were included in the Court's findings of fact, as noted, albeit in summary form. The Court's findings are designated (F.F. No. _____).

tion in Florida in February, 1973, he had a severe attack and was hospitalized. This was followed by six subsequent attacks, according to the testimony of the wife, each of which required hospitalization, and during this period the husband had surgery at the hands of the famous Dr. DeBakey at Houston, Texas to open the carotid artery. Later, a pacemaker device was installed in aid of the heart function.

Prior to November 11, 1977[2] the parties argued and disagreed from time to time, and on three occasions contemplated divorce (F.F. No. 8). Most of the difficulty stemmed from conflicts between the parties arising from the husband's interest in his two sons and his former wife, Margaret. While there is no claim of any personal impropriety in this connection, it is obvious that it was a fertile source of argument, bickering, dispute and unpleasant encounters, which on three occasions led to serious discussions and contemplation of divorce. This overindulgence toward his sons and former wife on the part of the husband and, perhaps, jealousy or irritation on the part of the wife, led to increasing friction and loss of control of emotions and reason, which culminated in a physical episode on June 11, 1977 during the course of which the wife pushed the husband so that he fell against a bedside table and a bed (F.F. Nos. 9, 10) and was ordered from the home by the wife. He went to his son's home and the wife placed all of his clothing and personal belongings in the front yard of the home, where they were retrieved by the husband and his son. He did not thereafter occupy the home, no reconciliation was attempted by either party, and the separation became permanent thereafter (F.F. No. 11). This action for dissolution followed after a lapse of several months.

The husband, Dr. Pate, testified in substance that so far as he was concerned, under the long-standing conditions of the marriage and the state of his health the marriage was irretrievably broken. The facts above summarized came from both the parties' testimony and was without any substantial dispute, except the appellant denied that she was the aggressor in the argument and resulting physical encounter of June 11, 1977, and stated that her husband "beat her up" on that occasion. Her testimony as to the salvage of the marriage was confined to the bold and isolated statement (opinion) that the marriage was not irretrievably broken, unsupported by any reasons or facts that would lead to that belief. Neither did she testify as to any facts or conditions that would warrant the conclusion that the husband could be reasonably expected to resume the marital relation with her.

It should be here noted that the record reveals that the husband was not free from fault throughout the course of this marriage and to say the least, showed a lack of good judgment in his relationship with his sons and former wife, pertaining to financial matters, most of which were known to the appellant-wife.

■■■ The question of fault is not determinative of whether a marriage should be dissolved (or a decree of legal separation entered). This Court's duty is confined to a determination of whether the evidence warranted the court below to find that there remained no reasonable likelihood that the marriage could be preserved and therefore the marriage was irretrievably broken. *In re Marriage of Capstick*, 547 S.W.2d 522[1–3] (Mo.App.1977). This Court should set aside the decree only if there was insufficient evidence to support the trial court's finding to that effect. The power of this Court to do so should be exercised with great caution and the decree should be set aside only if this Court has a firm belief that the decree is wrong. *Murphy v. Carron*, supra; *Gummels v. Gummels*, 561 S.W.2d 442, 443[3] (Mo.App.1978). This record is replete with substantial evidence to support the decree entered below resolving this question and the court reached the proper conclusion.

2. The pleadings adopt the date of June, 1977 and the testimony of both parties unqualifiedly sets the date of the last altercation and final separation as June 11, 1977. The use of the date November 11, 1977 in the judgment is in error, although basically not material.

Appellant's Point I is ruled against her as to the sufficiency of the evidence. However, because of the technical point raised by her in relation to the sufficiency of the decree as to the findings of fact, as above noted, the decree and judgment of the court below is amended by the mandate herein as hereinafter set forth. Rule 84.14.

■ The appellant-wife asserts as her Point II on this appeal that the court erred in failing to include as marital property certain certificates of deposit purchased by money on deposit in a joint checking account during the marriage. She makes no complaint as to those items which the court found to be marital property and therefore subject to distribution between the parties, nor as to the distribution of those items. Her position is that the C/D's purchased from joint funds should have been included as marital property subject to such distribution by reason of the presumption that property owned by husband and wife jointly is marital property and that such presumption is not rebuttable. She relies upon the provisions of § 362.470 RSMo 1978 under the laws governing Banks and Trust Companies, and Section 369.150 RSMo 1978 relating to Savings and Loan Associations. It is apparent from the terms of these statutes that they are intended to cover and extend only to the authority of such financial institutions to pay out funds of a jointly held account to one of the named owners and to protect them against claims arising from such authorized payouts. Neither statute bears directly upon the problem here being considered nor do the two cases cited by the appellant in support of her position. Rather, the statutory provisions here directly involved are found in § 452.330 RSMo 1978 which deals directly with disposition of property in connection with dissolution proceedings. Pertinent here, this statute provides that the court set aside to each spouse his or her premarital property and make divisions as to marital property. The statute further provides, § 452.330–2.(2):

"2. For purposes of sections 452.300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

\*    \*    \*    \*    \*    \*

(2) *Property acquired in exchange for property acquired prior to the marriage* \*    \*    \* "

\*    \*    \*    \*    \*    \*

3. All property acquired by either spouse subsequent to marriage \*    \* is presumed to be marital property regardless of whether title is held individually or by spouses in some form of coownership \*    \*    \*. *The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.*

\*    \*    \* "

(Emphasis added)

■ It thus appears that the presumption of marital property upon which appellant relies may be overcome or rebutted. See *Forsythe v. Forsythe,* 558 S.W.2d 675, 678[5, 6] (Mo.App.1977); *Conrad v. Bowers,* 533 S.W.2d 614, 621[10] (Mo.App.1975). Thus by statutory authority a showing that the C/D's claimed here to be marital property were acquired by the husband in exchange for premarital property owned by him overcomes the presumption. *Stark v. Stark,* 539 S.W.2d 779, 782[2] (Mo.App.1976); *Davis v. Davis,* 544 S.W.2d 259, 264[4, 5] (Mo.App. 1976).

The evidence was uncontested that at the time of the marriage the respondent held premarital assets having a total approximate value of $128,000.00 which included the checking account in North Kansas City State Bank which he used not only for general expenses but also a trading account for his investments, which consisted substantially of certificates of deposit and pass book accounts in Sentinel Federal Savings & Loan Association. The appellant-wife disclaimed any detailed knowledge of his holdings and assets. She brought to the marriage as premarital property a $2000.00 savings account and an automobile. She stated that while she remained employed

for the year and a half after her marriage to the respondent she put her paychecks into this account and she stated that she put her husband's name on her savings account. Sometime after the marriage her husband told her he had made arrangements so that she could draw checks on the account and thereafter she wrote most of the checks for their joint expenses, medical bills, etc. The bank records as to how this account was actually carried were not in evidence and are not before this Court.

However, the respondent stated he wanted his wife to have the use of these funds for her personal expenses and the living expenses of both, and she was authorized to use it for those purposes without restriction. During the marriage the respondent apparently deposited funds from his investments and income from whatever source in that account, and from time to time purchased the C/D's here in dispute, which at the separation decree amounted in face value to slightly over $100,000.00. All of these were in his name and one or the other of his sons, except one registered in his name and that of the appellant in the amount of $27,359.44.

The whole impact of the respondent's testimony was that he did not have any intention at any time to transfer ownership of his premarital assets to the appellant but did intend to afford her the use thereof. In fact, she knew nothing about any of the details of such assets and stated she did not know that she was a joint owner of the checking account (if she was) until the day of the trial.

▆ Under the state of this record the court did not abuse its discretion in holding that the bank account was not marital property. The presumption, if it ever came into being under these facts, was rebutted.

The court found that the marital property consisted of:

The motor vehicle and trailer (the only evidence as to value thereof was $11,000.00 testified to by the respondent) ..... $11,000.00
Proceeds of sale of home ..... 27,520.51
Proceeds of sale of household goods ..... 1,529.02
Proceeds of sale of TWA stock ..... $ 3,544.47
C/D Sentinel Federal Savings & Loan (registered in joint names) ..... 27,359.44
Prestige Account—Sentinel Savings ..... (No value shown)
ーーーーーー
$70,953.44

▆ The court awarded the appellant the motor vehicle and trailer and $48,000.00 in cash in the division of the marital property, a total of $59,000.00.

Under a multitude of authorities, including those cited herein, the trial court had broad discretion in determining the identity of marital property and in its division. No abuse of that discretion or error of law appears, and the appellant's Point II is ruled against her.

Her Points III and IV allege error in failing to award her maintenance and attorney's fees.

As to the claim for maintenance, there can be no dispute on this record that the respondent, due to his advanced age and the perilous condition of his health, was no longer practicing his profession as a medical doctor and is and will remain otherwise unemployable. His income, including all sources, is approximately $1350.00 per month.

The appellant has made no effort toward employment in the field of the operation of charitable organizations, in which she has a broad experience with the Heart and Cancer Associations, or in any other field, and is without income. While she has no particular training or skills, she enjoys comparatively good health except for some high blood pressure, and is obviously a woman of intelligence. There are no children of this marriage. The appellant is apparently now living in Florida and testified that her living expenses were approximately $1050.00 per month.

Section 452.335 RSMo 1978, provides in part:

"1. In a proceeding for * * * dissolution of marriage or legal separation * * * the court may grant a maintenance order to either spouse, *but only* if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, *including marital property apportioned to him,* to provide for his reasonable needs, * * " (Emphasis added)

In this area the trial court has broad discretion and its exercise of such discretion should not be disturbed on appeal unless an abuse thereof clearly and convincingly appears. *Beckman v. Beckman,* 545 S.W.2d 300[1, 2] (Mo.App.1976); *Naeger v. Naeger,* 542 S.W.2d 344, 347[6] (Mo.App. 1976). In light of all of the factors appearing in this record, the age and condition of the parties, the absence of any responsibility for children and the division of marital property to the appellant, no abuse of discretion appears in the denial by the court of an award of separate maintenance.

What is said above about the denial of separate maintenance applies with equal force to the matter of attorney's fees. Here, also, the matter is largely within the sound judicial discretion of the trial court. *Hebron v. Hebron,* 566 S.W.2d 829, 835–836[14] (Mo.App.1978) and cases cited therein. The refusal to grant attorney's fees on this record was not an abuse of discretion. Appellant's Points III and IV are ruled against her.

Under the authority granted this Court by Rule 84.14 (formerly part of Rule 83.13) the judgment and decree below is amended by changing Paragraph 4 of the Conclusions of Law portion thereof to read:

"4. That the respondent-wife has behaved in such a way that the petitioner-husband cannot reasonably be expected to live with the respondent and there remains no reasonable likelihood that the marriage can be preserved and, therefore, the marriage is irretrievably broken."

As amended, the judgment and decree of the court below is in all particulars affirmed.

All concur.