Julia COWIE, Appellant,

v.

John J. COWIE, Respondent.

No. 43598.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 9, 1982.

---

Robert D. Benjamin, St. Louis, for appellant.

G. William Wynn, St. Louis, for respondent.

CRIST, Judge.

Marriage dissolution proceeding. Husband denied the marriage was irretrievably broken and the trial court agreed. Wife appeals. We reverse and remand for new trial.

The trial court found "there has not been a meeting of the burden of proof in terms of irretrievability of the marriage." Accordingly, the question is whether or not there was sufficient evidence for the trial court to find that the marriage was irretrievably broken. At the close of wife's case, the trial court indicated husband's behavior, as described by wife, had been reprehensible. At the close of all the evidence, the trial court indicated that husband had been guilty of "gross insensitivity." The trial court stated: "I personally believe that these people should get divorced because I believe she's depressed because she's in an unhappy marriage...."

The pertinent part of § 452.320–2(1)(b), RSMo. 1978 reads:

That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent.

In *Gummels v. Gummels*, 561 S.W.2d 442, 443 (Mo.App.1978) the court said: "We note that [the] statute refers to a spouse's behavior not—misbehavior." *In re Marriage of Pate*, 591 S.W.2d 384, 388 (Mo.App.1979), the court stated: "The question of fault is not determinative of whether a marriage should be dissolved...."

The parties were married on November 6, 1975. One child was born on July 11, 1979. The trial began on September 9, 1980. Wife testified there was no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken. Husband had behaved in such a way that she found it unreasonable to live with him. The wife then testified to specific instances as to why husband had behaved in such a way that she found it unreasonable to live with him.

One of husband's most disturbing propensities was his unwillingness to communicate with wife for long periods of time lasting up to six weeks. This behavior was engendered, for example, by wife's failing to pick husband up from work shortly after they returned from their honeymoon, wife's misloading of a gun at a gun club competition, and his failing to enjoy himself on a trip through Europe.

Wife related numerous instances where husband refused to sleep in the same bed with her, sometimes for periods lasting up to two weeks. One time, husband even called the couple's dog to the bed after he had forced wife to sleep on the couch. Husband was employed by Anheuser-Busch and worked six or seven days a week. He would also go up to eight weeks without bathing and would wear the same clothes for a week at a time.

Husband expected wife to take care of all household details, such as snow shoveling, taking out trash, doing laundry, cooking, handling household expenditures, and grocery shopping. All of the bills were to be paid from wife's salary, plus $30.00 per week from husband's earnings. Husband did not permit wife to watch television after 9:00 p. m. When he would work evenings, husband regularly woke wife when he would arrive home and keep her awake until he was ready to go to sleep.

Husband refused to purchase new furniture for the couple's apartment, nor would he allow wife to replace an old canning machine. Even so, he bought a new electric welder for himself. Husband would continually berate wife, telling her she was dis-

gusting, crazy, that he did not love her and that she lived in "Utopia" if she expected love.

Husband refused to allow wife to use their clothes dryer when she did the laundry because to do so would be too expensive. He would also go through the trash to determine whether wife had thrown away items he believed to be of value, such as Michelob bottles or frozen cake pans. Husband also criticized wife for volunteering to drive for the Meals on Wheels program because the cost of gasoline ($1.00 per week) was too high.

When wife was pregnant with the couple's only child, husband forced wife to walk four blocks, in sub-zero temperature, from a house they were rehabilitating back to their apartment. Husband also began to smoke during her pregnancy and would purposely blow smoke in wife's face. According to wife, husband stated that he believed he was not the father of the child as the couple had only one act of intercourse during the period of conception.

Husband denied most of the allegations testified to by wife. However, the trial judge did not decide the case on credibility. Rather, the case turned upon the fact that there was insufficient proof of unreasonable behavior. Under *Gummels* and *In re Marriage of Pate, supra,* wife's evidence was sufficient for her burden of proof.

Judgment reversed and remanded for a new trial.

REINHARD, P. J., and SNYDER, J., concur.