Greydon Wesley NEDBLAKE,
Petitioner/Respondent,

v.

Orchid Lee NEDBLAKE,
Respondent/Appellant.

No. WD 34517.

Missouri Court of Appeals,
Western District.

Dec. 11, 1984.

Robert C. Paden, Independence, for respondent-appellant.

Michael H. Maher, Kansas City, for petitioner-respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Orchid Lee Nedblake (wife) and Greydon Wesley Nedblake (husband) were married on July 10, 1979, and the marriage was dissolved on December 10, 1982, following a final separation which began on September 1, 1981. Both parties concede the marriage was "rocky" and they separated numerous times during the two years. The

wife appeals the trial court's distribution of property upon dissolution. Setting forth the complaints each had against the other would serve no purpose in this case. The judgment is affirmed as modified.

On their wedding day, the couple entered into an "Antenuptual Agreement" which set out the properties owned by each before the marriage. The wife owned four houses in Kansas City, Missouri, which she subsequently sold, and certain tangible personal property. The husband held a "substantial ownership interest" in Package Service Company, Inc., and an assortment of realties. The agreement provided that upon dissolution, the parties would "take her or his property and half of any property acquired *by them* subsequent to such marriage in lieu of" any alimony or maintenance claim. (Emphasis added.)

The wife challenges the dissolution decree by first contending that the trial judge misapplied the law regarding antenuptial agreements by awarding to the husband marital property valued at $715,553 and awarding to her marital property valued at $29,407. Second, and in the alternative, she contends that after considering the factors set forth in § 452.330.1, RSMo the court erroneously awarded her substantially less property than her husband.

■ The wife is not alleging that the agreement itself is invalid but she is alleging that the court did not abide by its terms and order an equal division of all marital property. Due to the parties conceding the validity of the agreement, a discussion of the second contention is unnecessary. Antenuptial agreements will be upheld and will dispose of the issues of division unless found to be unconscionable. *Ferry v. Ferry*, 586 S.W.2d 782 (Mo.App.1979).

The tenor of this case is best illustrated by setting forth both parties' impressions of the court's well drawn and exhaustive decree. The wife alleges that the following schedule is a correct representation of the court's distribution of the marital assets.

| | Husband | Wife |
|---|---|---|
| a) Household furnishings and personal belongings | $ 6,896 | $ 7,157 |
| b) Ford Mustang automobiles | 22,250 | 5,750 |
| c) Real property | 37,500 | 16,500 |
| d) Stock in Package Service Company | 648,907 | –0– |
| Total | $715,553 | $29,407 |

Note that in the husband's schedule concerning marital assets, he does not include the interest in the Package Service Company. Nor does he recognize the award for automobiles. Also, there is a difference of opinion as to how the "Jeff Nedblake loan" affects the real property figures.

| | Husband | Wife |
|---|---|---|
| a) Household furnishings and personal property | $ 7,126 | $ 7,157 |
| b) Automobiles | –0– | 750 |
| c) Cash in lieu of accounting for auto disposed of | –0– | 5,000 |
| d) Marital home | 10,500 | 10,500 |
| e) 8233 N. Oak (4,000 marital equity) | 2,000 | 2,000 |
| f) Gladstone acreage (no net marital interest) | –0– | –0– |
| g) Jeff Nedblake loan (wife's interest) | –0– | 4,000 |
| Total | $ 19,626 | $29,407 |

It is readily apparent that the most highly contested aspect of the court's decree is the setting aside to the husband the forty-one percent interest, worth, according to the trial court, $648,907 in Package Service Company, Inc., acquired during the marriage, as his sole and separate property. The events leading to the acquisition of the interest are set forth as follows.

Package Service Company, Inc., is a corporation which was formed in 1939 by the husband's father, mother, and another family, and has been solely operated by the husband's family since 1950. At the time of the marriage the husband held a twenty-nine percent interest in the corporation and had served as president for six to eight years.

On January 18, 1981, approximately eight months before the parties' final separation, he acquired an additional forty-one percent interest in the corporation from his mother and stepfather by agreeing to pay

$100,000 to his mother and $66,000 to his stepfather. His son, Jeff Nedblake, acquired stock in the same manner. The transaction occurred strictly between the husband, his son, his mother and his stepfather. For the first five years he was to pay only the interest of $1,200 per month.

The wife contends the agreement clearly mandates an equal division of all property acquired during the marriage, regardless of which party acquired the property, and because the trial court designated the forty-one per cent interest in the corporation as marital, it had no option but to divide the interest equally. It is true that the court initially referred to the interest as marital by stating, "The Court finds that the Respondent made no contribution to the acquisition of this *marital* property ....." (Emphasis added.) However, it continued in stating, "The Court also notes that the Antenuptial Agreement ... indicates that the Petitioner had a 'substantial ownership interest' in Package Service Company, Inc., and the Court finds that any interest in the corporation acquired by the petitioner subsequent to the marriage is excluded by valid agreement of the parties." It is apparent the trial court did not look upon the agreement as being clear and unequivocal, nor does this court. Under § 452.330.2, RSMo Supp.1984, a finding that property is excluded by valid agreement renders the property separate by rebutting the presumption that property acquired by either party after the marriage is marital property.

Consequently the question for this court is not whether the trial court misapplied the law regarding antenuptial agreements, but rather, was the trial court's finding of separate property supported by substantial evidence and by the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The wife argues that the trial court's basis for excluding the property is beyond reason, in that the "substantial ownership interest" referred to in the agreement encompassed only the pre-marital interest. The trial court did not explain its ruling that the corporate interest was excluded by valid agreement. But, "the primary concern on appeal is the correctness of the result reached by the trial court and not the route by which it was reached," *Maryland Plaza Redevelopment v. Greenberg*, 594 S.W.2d 284, 286 (Mo.App.1979), and there is ample evidence to support a finding that the corporate interest was not acquired *by them*, the husband and wife, but by the husband alone and therefore properly excluded under the terms of the antenuptial agreement.

The wife did not contribute any funds to the acquisition of the stock, she did not execute any notes for the purchase of the stock, she was not a party to the transfer agreement, nor was she issued any shares of stock. She testified that she did not consider the stock acquisition to be a gift to her. The transaction was strictly within the family relationship of the husband, his mother, stepfather and son, and the trial court found it to be primarily for the purpose of providing his mother and stepfather "a constant, adequate monthly income free from the responsibilities of making management and business decisions." The wife testified, "He told me that he was going to give his mother enough so that she could live a comfortable life, but that was all he was concerned with ...." It is not clear from the record whether or not the stock certificates were ever transferred. It is certain that the husband had not yet made any payments on the principal.

Although the trial court's finding may not have been sufficient justification, on its face, for excluding the property, the trial court could have found the corporate interest to be the husband's separate property in that it was excluded from the marital estate by a valid agreement because it was not acquired by them. If the trial court erred in its designation of the interest, this error does not necessarily invalidate the trial court's conclusion where the court ultimately reached the correct result as it did in this particular case. *Miller v. Miller*, 635 S.W.2d 350, 352 (Mo.App.1982);

*Smith v. Smith,* 561 S.W.2d 714, 718 (Mo. App.1978).

In keeping with the spirit of the antenuptial agreement, this court concludes that the trial court did err in the disposition of certain other properties.

First, the couple accumulated during the marriage several Ford Mustang automobiles worth a total of $28,000. At the time of dissolution, only one of the automobiles was before the court. The husband, who had apparently been in possession of the vehicles, gave little or no explanation of their whereabouts. The wife was awarded the remaining automobile valued at $750, and $5,000 cash in lieu of the missing ones.

The trial court has the power to consider depleted assets in dividing the marital property. *Mills v. Mills,* 663 S.W.2d 369, 373 (Mo.App.1983). *Marriage of Faulkner,* 582 S.W.2d 292, 295–96 (Mo.App.1979); *Daniels v. Daniels,* 557 S.W.2d 702 (Mo. App.1977). Here, the trial court *did* consider the assets, but erred in its failure to divide the property equally according to the antenuptial agreement. Due to the uncontroverted evidence concerning the value of the automobiles and their unknown whereabouts, the trial court should have awarded the wife half the value of the missing automobiles rather than determining her interest to be the unsubstantiated amount of $5,000. Under the authority of Rule 84.14, this court hereby awards the wife an additional $8,250 in order to effect the equal division contemplated by the parties.

Second, the trial court awarded the wife $4,000 as her interest in a $29,000 loan made to the husband's son, Jeff Nedblake, during the marriage. The couple had purchased approximately $16,000 worth of silver which was co-mingled with silver the husband had brought into the marriage. Subsequently, the silver was stolen and the insurance company settled the loss for $39,-000. The $29,000 loan to the son was funded by the proceeds.

There was no evidence from which the trial court could find that $8,000 of the insurance proceeds were earmarked to cover the silver purchased during the marriage. The evidence does show there existed $16,000 in marital assets and those assets are traceable through a series of events to the Jeff Nedblake loan. This court concludes that the marital interest in the loan was not $8,000 as found by the trial court, but $16,000, that being the value of silver purchased during the marriage. The trial court should have set off to the wife $8,000 as her share of the insurance recovery and this court, pursuant to Rule 84.14, hereby awards her an additional $4,000.

In order to satisfy this court's decision that the wife is entitled to receive a greater share of the interests in the automobile and silver proceeds than originally ordered, the decree is hereby amended as follows:

The respondent/husband is further ordered to pay the appellant/wife as her share of the marital assets the additional sum of $12,250.

The judgment as modified is affirmed.

All concur.