Barbara A. SALCEDO, Respondent,

v.

Jose R. SALCEDO, Appellant.

No. 48473.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 25, 1985.

Catalona & Sherry by Janet F. Catalona, Clayton, for respondent.

Todt and Walther by Charles P. Todt, St. Louis, for appellant.

SIMON, Presiding Judge.

Husband appeals from a decree of dissolution entered in the Circuit Court of St. Louis County and challenges the trial court's findings concerning income, maintenance, and the division of marital property. Husband contends that no substantial evidence supports certain of the trial court's findings, in particular: (1) that his net income was $73,688.00; (2) that wife derived only an indirect benefit from his use of certain insurance policy proceeds and his 1982 tax refund; and (3) that he could make $70,000.00 upon his retirement because his declining health may preclude future employment. Husband also contends that the trial court failed to follow the factors in § 452.335, RSMo 1978 in its award of maintenance to wife and that it improperly balanced the factors governing the division of marital property. We affirm.

The parties married in Tallahassee, Florida, on June 20, 1968, and separated on October 5, 1982. At the time of the hearing, they had been married fifteen and a half years and had three children, ages 14, 12, and 8. Husband has five children by a previous marriage. The record is silent concerning the ages of these five children and husband's attendant support obligation. Wife is thirty-six years old and currently unemployed. At the time she and husband married, she had three and a half years of college credit and was working toward a master's degree in English in order to obtain a teaching certificate. Husband is fifty-nine years old, received a medical degree from Tulane University and is a physician in the United States Army with the rank of colonel. He has been in the service from 1953 to the present, except for a break from approximately 1955 to 1964. He is currently the chief of the Health and Dental Clinic in the Department of Languages in Placedo, California.

After a two day hearing, the trial court entered its decree of dissolution on February 9, 1984, subsequently amended in part on March 9, 1984. In the decree, the court found the husband's net annual salary to be $73,688.00 and found him capable of earning $70,000.00 annually upon his retirement. Wife was awarded attorney's fees of $2,602.05 and costs of $385.04, thirty percent of husband's retirement pay, monthly child support of $300.00 for each child, and monthly maintenance of $500.00 for three years. The court ordered the family home sold with husband and wife to share equally in the proceeds after the indebtedness on the home was paid. The 1983 income tax refund was split with two-thirds payable to husband and one-third to wife. Husband was ordered to pay $4,705.00 for various credit card debts and $10,171.00 on a loan to the National Bank of Fort Sam Houston. The court set aside as wife's sole and separate property one small bedroom set ($50.00 in value) and a 1981 Plymouth Horizon having equity of $500.00 which she acquired by gift from her mother. She and husband each received non-income producing marital personal property which is not at issue on appeal; therefore, we need not recite its disposition. Husband's motion to strike the supplemental legal file and exhibits is hereby denied.

The standard of appellate review is clear. The trial court judgment is to be sustained unless there is no substantial evidence to support, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1-3] (Mo. banc 1976).

Husband's first point on appeal states no evidence in the record supports the trial court's finding of fact that husband had a net salary of $73,688.00. The trial court derived this figure by calculating that husband received gross monthly wages of $5,730.61 from which $1,256.61 was deducted for income and social security tax resulting in a net monthly wage of $4,474.00, or $53,688.00 yearly net salary. The judge added $20,000.00 to husband's annual net salary after finding that husband receives an annual bonus of $15,000.00 and a tax refund of $5,000.00.

Husband disputes the inclusion of the tax refund and the amount of the bonus in the computation of his net salary. Husband states the evidence did not show his annual bonus to be $15,000.00. Husband also contends the inclusion of $5,000.00 from his 1982 income tax refund as a fixed sum in his annual salary was erroneous because nothing in the record reflects that husband received that amount in the past or would receive that amount in future years. Instead of the trial court determination of $73,688.00, husband calculates his salary to be $61,703.00, derived by using $8,015.00 instead of $15,000.00 for his annual net bonus and by excluding the $5,000.00 income tax refund. Therefore, he determines his monthly disposable income to be $5,141.00, nearly $1,000.00 less than the trial court's calculation of $6,140.00.

In oral argument wife conceded that the transcript referred to an annual bonus of only $10,000.00 in gross, but that no evidence, other than husband's bare statement of a tax deduction from his bonus, supports husband's calculation of a bonus of only $8,000.00 after taxes. Thus, the computation of $15,000.00 as the bonus in husband's net annual salary is admittedly erroneous by at least $5,000.00 or as much as $7,000.00.

■ No evidence supports the trial court's inclusion of $5,000.00 from husband's 1982 income tax refund as an amount routinely accruing to husband's annual salary. The error in the inclusion of $5,000.00 from tax refunds as a portion of husband's annual salary becomes more apparent upon reflection that the trial court subsequently ordered husband and wife to file a joint 1983 income tax return and awarded one-third of the 1983 income tax refund to wife. The calculation of husband's 1983 annual net salary is in error if the total refund is less than $7,500.00; however, the total amount of the 1983 income tax refund is not in the record. Nothing in the record indicates the likelihood that the amount of husband's income tax refunds is constant from year to year. Therefore, we conclude the trial court's inclusion of $5,000.00 from income tax refunds as a component of husband's annual net salary is error. The trial court miscalculated husband's annual net salary by at least $5,000.00 for the bonus and $5,000.00 for the income tax refund. Husband's net annual salary, revised accordingly, approximates $63,688.00.

■ Despite any error in the trial court's calculation of husband's annual net salary, the maintenance and child support awards based on the revised salary figure are neither unreasonable nor without precedent. *See In Re Marriage of Runez*, 666 S.W.2d 430 (Mo.App.1983).

The primary concern on appeal is the correctness of the result reached by the trial court and not the route by which it was reached. *Nedblake v. Nedblake*, 682 S.W.2d 852, 855[4] (Mo.App.1984). Ample evidence exists that husband has sufficient resources, regardless of the error in the calculation of his salary, to meet the maintenance and child support awards. If the trial court erred in its finding of fact concerning husband's salary, this error does not necessarily invalidate the trial court's awards based on that fact where the court ultimately reached the correct result, as it

did in this case. *Id.* [6]. We conclude that substantial evidence supports the judgment of the trial court in finding husband capable of meeting his financial obligations to wife and their three children, notwithstanding its erroneous calculation of his salary.

■ Husband's second point challenges the trial court's finding that he is capable of earning $70,000.00 annually upon his retirement at age sixty-two because of evidence that his health may preclude future employment. Husband argues that, at fifty-nine, he has recently been diagnosed a diabetic requiring daily insulin injections and resulting in the deterioration of his vision. In determining the future employability of a party, the trial court is not restricted to a consideration of present earnings and can consider prior earning capacity and probable future prospects. *Tygett v. Tygett,* 639 S.W.2d 282, 285[7] (Mo.App.1982). The evidence must support the inference without resort to speculation that the expectation of such earnings will be realized. *Id.*

■ Husband admitted he had been offered the position of a hospital medical director for $70,000.00 annually and a position with an insurance company for a large, unspecified salary which wife testified was $90,000.00. While these job offers preceded his discovery of his diabetic condition, nothing in the record beyond his own statements of his declining health supports his view that "a quantum leap is required" to draw the inference that a new employer, knowing his medical history, would be willing to pay him a $70,000.00 salary. We find the evidence of husband's current earnings and evidence of his job opportunities following his retirement to be substantial evidence for the trial court's finding that husband's annual salary, even after retirement, will be $70,000.00. Point denied.

Husband's third point posits trial court error in the maintenance award to wife. Wife was awarded rehabilitative maintenance of $500.00 per month for three years. Because wife is only thirty-six years in age and has three and a half years of college education, husband argues her employment potential is so good that maintenance for three years duration is excessive. He states wife "can obtain a college degree within one semester and clearly become self-sufficient in conjunction with the $900.00 monthly child support payments." He would have us deny rehabilitative maintenance or reduce its term to no more than six months.

■ In *Doerflinger v. Doerflinger,* 646 S.W.2d 798, 800 (Mo. banc 1983), the Missouri Supreme Court noted that § 452.-335, RSMo 1978, grants wide latitude to the trial court in decreeing spousal maintenance and, after giving due consideration to all of the factors which the statute enumerates, the court must undertake not only to set the amount payable but determine for what period the payments shall be made. The court further held that the statute plainly indicates that dependency of a spouse is not presumed but rather a spouse seeking maintenance is, in proper cases, to be encouraged and aided in becoming self-sufficient by education or training. *Id.* This statute gives the trial court considerable discretion as to the allowance and the amount of maintenance payments, *Pederson v. Pederson,* 599 S.W.2d 51, 53 (Mo.App.1980), and it is husband's burden on appeal to demonstrate an abuse of that discretion. *Bull v. Bull,* 634 S.W.2d 228, 229[5] (Mo.App.1982). To warrant reversal or revision on appeal, the amount of maintenance granted must be patently unwarranted or wholly beyond the means of the spouse thereby obligated to pay. *In Re Marriage of Honeycutt,* 649 S.W.2d 502, 504 (Mo.App.1983); *In Re Marriage of Schafer,* 609 S.W.2d 198, 200 (Mo.App. 1980).

■ Wife has no income-producing property and no income. Although she has college credits, she did not work prior to their marriage and has worked outside the home only two days in fifteen and a half years of their marriage. No evidence reasonably established that wife will attain her college degree within six months and

will find employment sufficient to warrant husband's maintenance payments unnecessary. We find no abuse of discretion in the trial court's award of rehabilitative maintenance for the three year period.

■ Husband's final point attacks the division of the marital property. He states that the trial court error in its findings of fact regarding husband's annual salary and future employability requires reconsideration of the marital property distribution. The gist of husband's dissatisfaction turns on the trial court's order concerning the marital residence and the debt to National Bank of Fort Sam Houston. The trial court valued the marital residence at $105,000.00. The encumbrances from the two mortgages, down payment notes, and tax liens are $120,662.00. The house was ordered to be sold at the best price obtainable with the parties splitting evenly the proceeds after satisfaction of the debts. If the sale proceeds were insufficient to meet the encumbrances, husband was ordered to pay the deficiency. Husband claims this arrangement unfair since it is unlikely in today's housing market that the house will sell for its value, and, more probably than not, he will be required to pay off jointly incurred marital debts. Although both husband and wife are required to pay equally on the mortgage payments, taxes and insurance until the house is sold, wife's exclusive right to remain in the house until it is sold, while husband alone must pay on the down-payment notes of approximately $984.00 a month, compounds the unfairness in his view. Husband's claim of unfairness that he bears a disproportionate risk of loss should the house not be sold for its value is now moot. Exhibits filed in this court reflect husband failed to make any payments on the house after January 30, 1984, and that it was sold in distress on August 1, 1984.

■ Husband's further complaints with the marital property division are without merit. The division of marital property need not be equal but must be just. *Dardick v. Dardick*, 670 S.W.2d 865, 869[4] (Mo. banc 1984). In its decree the trial court set aside to wife her separate property valued at $550.00 and marital property worth $12,362.00. Husband was awarded separate property and marital property worth $19,126.00, but set-off by debts totalling $14,108.00. A difference with the marital property of only $7,300.00 in favor of wife certainly is not unreasonable or unjust, particularly in light of her custody of the children. Recalling that wife has the primary care and custody of the parties' three minor children, but has no property, no income, and no job, and keeping in mind that the trial court is vested with considerable discretion in dividing marital property and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion, *id.* [5], we are not convinced the trial court's division of the marital property in the instant case is so unreasonable as to constitute an abuse of discretion.

Judgment of the trial court is affirmed.

STEPHAN and KAROHL, JJ., concur.