**Jean M. HEBRON, Petitioner-Appellant,**

v.

**Robert E. HEBRON, Respondent.**

**No. 38250.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 28, 1978.

---

Richeson, Roberts, Webmann, Gasaway, Stewart & Schneider, John A. Schneider, Hillsboro, for petitioner-appellant.

Jeremiah Nixon, Hillsboro, for respondent.

DOWD, Judge.

The twenty one year marriage of appellant Jean Hebron and respondent Robert Hebron was dissolved on March 19, 1976 in Jefferson County, Missouri. The court's division of property, order as to maintenance, and ruling as to attorney's fees are disputed on appeal.

The parties were married on November 26, 1955. From 1965 to 1975 they lived with their five children in a home they built on Lonedell Street in Arnold, Missouri. In April of 1975, appellant obtained a court order for respondent to leave the family home. They have been separated since that time. At the time of the dissolution proceeding appellant was 42 years old and respondent 44 years old.

At the dissolution, the trial court ordered nearly all of the assets of the parties, which consisted of stocks and real estate, sold and proceeds divided equally. Appellant and the five children are to have the use of the family home until the youngest child, age 13, is emancipated. At that time the home is to be sold and proceeds divided equally. However, appellant is to be credited for house payments she makes after April 1, 1976. Respondent is to pay appellant $100.00 per month maintenance which will terminate April 1, 1985 or upon her remarriage. The five minor children are to be in appellant's custody, with respondent paying $100.00 per month per child until each child is emancipated. The trial court found that the American General Insurance stocks which are held in respondent's name in a company retirement trust, valued at $3,000, to be respondent's separate property. The furnishings in the family home, valued at $3,000, were awarded to appellant as her separate property. Each party was to pay his or her own attorneys fees, and respondent is to pay the court costs for trial.

We must affirm the judgment below unless it is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Smith v. Smith*, 552 S.W.2d 321, 323[4] (Mo.App.1977).

■ Appellant first challenges the division of property as to both the family home and the stock. The trial court possesses considerable discretion in its division of marital property following dissolution. *Klinge v. Klinge*, 554 S.W.2d 474, 477[3] (Mo.App.1977). Its decision will not be overturned absent abuse of that discretion. *In re Marriage of Simpelo*, 542 S.W.2d 558, 561[8] (Mo.App.1976).

We will first discuss appellant's contention that the family home on Lonedell was not marital property but her separate property. The relevant statute is § 452.330, RSMo 1969 which states that a trial court shall set apart to each spouse his or her separate property. Section 452.330.3 sets out the presumption that all property acquired by either spouse subsequent to the marriage is presumed to be marital property, regardless of how title is held. The presumption can be overcome by showing that property was acquired by exceptions listed under § 452.330.2. Appellant claims the home is her separate property because it falls into the second exception "property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift." She claims that if we examine the transactions that resulted in the acquisition of the home and lot upon which it was built, it will be apparent that the home is her separate property.

A discussion of all the details of these transactions is not necessary. To summarize, we need only point to the facts that appellant relies on most strongly to advance her cause. These facts are that $11,750 of the $19,750 purchase price of the first family home bought in 1957 was paid from her separate funds. Her father, Mr. Gangloff, gave $2700 for permanent home improvements and $1900 for furniture. When this house was sold, the proceeds, $14,450, were used to construct the Lonedell home. The lot on which the Lonedell home was built had been in appellant's family for three generations and was deeded to appellant in 1955 before her marriage. She held it in her name alone from 1955–1964. In 1965 she deeded it to herself and her husband as joint tenants. The parties lived in this home for the last ten years of their marriage. During this time appellant's father paid the taxes and insurance on the house. There was testimony that he did this in exchange for respondent's having referred clients to him. Appellant's father also paid for a rathskeller to be built in the Lonedell home, which cost about $880.

Do these facts require a finding that the Lonedell home is appellant's separate property because it is "property acquired prior to the marriage or in exchange for property acquired by gift"? § 452.330.2(2) We believe the answer is no.

■ The parties first home on Plainview was held in their joint names, as was the Lonedell home and lot. Property acquired after the marriage and placed in joint names is presumed to be marital property even if one spouse furnishes a greater part of the consideration. *Conrad v. Bowers*, 533 S.W.2d 614, 622[12, 13] (Mo.App. 1975). Clear and convincing evidence is required to show that the transfer of property to joint names was not intended as a provision for a settlement upon, or as a gift to the other spouse. *Conrad v. Bowers*, supra; *Ledbetter v. Ledbetter*, 547 S.W.2d 214, 215[1] (Mo.App.1977). The only evidence here is the testimony of appellant's father that the money he gave appellant over the years for the home improvements and for other things was intended to be gifts to her alone, bolstered by the statements by both appellant and her father that the first home on Plainview, and the Lonedell lot were both placed in joint names solely to obtain bank loans to finance the homes. This evidence does not rise to the "clear and convincing" standard enunciated in *Conrad v. Bowers*, especially in light of the following facts: First, during their marriage, appellant made no effort to treat either home as her separate property. Also, the house payments for both homes were made from respondent's paycheck. Respondent helped maintain the Lonedell lot by cutting grass and painting the old farmhouse before they built their home. He contributed his labor to the building of the

home by tearing down the old farmhouse, building a patio, and putting in panelling. Respondent did not learn that appellant would claim the house as her separate property until depositions were taken a few months before trial. The trial court's memorandum opinion aptly describes the situation:

"This is a twenty-year marriage that produced five children as well as a rather carefully reconstructed financial history which does, in fact, show the helping hands of doting grandparents as well as substantial, continued, economic growth through the successful employment of Respondent. Twenty years ago these parties were married in a church, not an accountant's office. There was no three-cornered prenuptial agreement, including Petitioners doting parents, to segregate the contributions of those third parties from the respondent herein. The gifts were made to both parties and the intent of those gifts is best determined by the documents and titles evident at the time the gifts were made, rather than the statements of "intent" made during the emotional trauma of the demise of a twenty-year marriage."

The Lonedell home is marital property. The trial court's decree regarding it is not erroneous.

■ Appellant's second point is that even if the home is marital property, it should have been awarded to her. She relies on § 452.330.1(1–4) for her contention, which is set out below.[1] She claims that if the court had properly weighed these factors, it would have awarded the home to her. The first factor, contribution of each spouse to the acquisition of the marital home, has been discussed. The second factor, value of the property set apart to each spouse, is

approximately equal; appellant was awarded the furnishings of the home, valued at $3,000, and her husband was awarded shares of American General stock held in his name alone, also valued at $3,000. All other assets were ordered sold and divided equally although the home was not to be sold until the 13-year-old boy is emancipated and appellant is to get credit at the time of the division of proceeds for the house payments she had made.

The third factor involves the economic circumstances of the parties. Appellant has worked for the past seven years on a part time basis at a church in Arnold, Missouri. Her take home pay is about $310 per month. She is also a licensed real estate broker, but has never participated in any sales. Her other income is $100 per month maintenance and $100 per month child support per unemancipated child. Thus, her monthly income at the present time is $910 per month.

Appellant's expenses are $103.19 per month for house payments. She also has expenses for private school, college tuition, and dental braces for the children but these need not be detailed since she does not appeal the child support award. Her health is good.

Respondent earns $1,058 per month as a marketing coordinator for an insurance company. Expenses for his rent and living expenses, child support, and maintenance, approximate $1300 per month, so that his expenses exceed his income by about $300 per month. He is under a doctor's care for a heart condition.

Finally, we are to consider the conduct of the parties during the marriage. There was testimony that respondent drank to excess and that appellant stayed out late at

---

1. § 452.330.1 reads:

"In a proceeding for . . . dissolution of the marriage . . . the court shall set apart to each spouse his property and divide the marital property in such proportions as the court deems just after considering all relevant factors including:

1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

2) The value of the property set apart to each spouse;

3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

4) The conduct of the parties during the marriage."

bingo games and was too lenient with the children. We have perused the record and conclude that neither party stands out as the villain in the breakdown of this marriage.

The record demonstrates that the order relative to the home is based on a consideration of the four factors set forth in § 452.-330.1 relative to a distribution of marital property. *Nixon v. Nixon*, 525 S.W.2d 835[2] (Mo.App.1975). While the trial court gives appellant credit for payments made on the home during her occupancy, we believe under the facts here that she is entitled to further credit for payments of insurance premiums and real estate taxes made after April 1, 1976. These payments would inure to the benefit of both parties.

Appellant next contests the court's division of the stock. She claims certain stock is her separate property because she held it in her separate name. Other stock she claims as separate property because, although held in joint names, it was purchased with cash gifts from her father.

We will first discuss the 150 shares of jointly held American General stock. In 1967, Jean and Robert Hebron bought 50 shares of American General stock. There are now 150 shares since the stocks split three to one. In order to buy the stock the two of them made a $4000 loan at Clayton Bank. Appellant claims she owns the stock because three fourths of the loan was repaid by the sale of a lot from her mother's farm. This lot was given to appellant but she deeded it to herself and her husband jointly before it was sold to repay the loan.

We hold that the 150 shares of American General Stock were correctly determined to be marital property. It was clearly "property acquired . . . subsequent to the marriage." § 452.330.3. The fact that she deeded land to herself and her husband as joint tenants before selling it, *Conrad v. Bowers*, supra, and then used the proceeds to pay off the joint obligation for the stocks, is conduct which shows a clear intent to contribute the land and proceeds from it to the marital property.

Other jointly held stock appellant claims as her separate property is 357 shares of common stock and 350 shares of preferred stock in Hampton Bank. This stock was purchased by Mr. Gangloff as a gift in 1956 or 1957 shortly after the parties were married, and given to them in their joint names. The purchase price was $5500. Mr. Gangloff bought it using the money his wife had left appellant. Appellant claims it was a gift to her alone, and thus is not marital property because it falls within the exception listed in § 452.330.2(2), which states that all property acquired by either spouse after marriage is marital property except property acquired by gift.

A gift to both spouses is presumed to be marital property. *Elmore v. Elmore*, 557 S.W.2d 910, 911[3] (Mo.App.1977); *Forsythe v. Forsythe*, 558 S.W.2d 675, 678[3] (Mo.App.1977). The *Forsythe* case noted that this is true because there are actually two presumptions to be overcome; the presumption that property acquired during marriage is marital property, § 452.330.3, and the presumption that property held in the joint names of husband and wife is owned by them as tenants by entireties. *Conrad v. Bowers*, supra, 533 S.W.2d at 622[12, 13].[2] Clear and convincing evidence is required to overcome the presumption of joint ownership. *Forsythe*, supra at 678[9], *Conrad v. Bowers*, supra, 533 S.W.2d at 622[1], 13].

Mr. Gangloff testified that he put the stock in joint names so it could be used for collateral to make it easier for the parties to obtain other loans financed through Hampton Bank, such as the loan for the Plainview house. Thus at the time he made this gift, when the parties were newly married, Mr. Gangloff intended to benefit his daughter and her husband in their capacity as husband and wife. Appellant's conduct did not indicate that the stock was her separate property. She put the dividend

---

**2.** This is true of both real or personal property, *Holt v. Myers*, 494 S.W.2d 430, 444[18] (Mo. App.1973) including securities. *Cann v. M & B Drilling*, 480 S.W.2d 81, 85 (Mo.App.1972).

checks into the joint account or cashed them and spent them for family groceries. The evidence is not sufficient here to overcome the common law presumption that transfer to husband and wife jointly creates a whole estate in them as one person. *Forsythe v. Forsythe*, supra, 558 S.W.2d at 679. The trial court did not err regarding the disposition of these jointly held stocks.

The final challenge appellant makes to the division of marital property is that the court erred in failing to set apart to her 15 shares of common stock and 15 shares of preferred stock in Hampton Bank, and 25 shares of American Express stock, all of which she held in her name alone. About 2½ years before the trial her father gave her the money for the Hampton Bank stock. About a year later, for a birthday gift, he gave her about $1400 for the American Express stock. We believe the trial court erred in concluding that this stock was marital property. Appellant received it as a gift, and in her name alone during the period when problems with the marriage became apparent. This evidence, plus the absence of any evidence such as commingling the stock with marital assets, *Jaeger v. Jaeger*, 547 S.W.2d 207, 211[5] (Mo. App.1977) or later placing it in joint names, *Conrad v. Bowers*, supra, showing an intent to contribute the stock to the marital estate, overcomes the presumption of marital property, § 452.330.3, and establishes that it was a gift to her alone, § 452.330.2(1). See *Conrad v. Bowers*, supra, 533 S.W.2d 614, 624, n. 16[20]. This portion of the trial court's decree should be reversed.

Appellant next attacks the maintenance order. Her attack is two pronged; first, she claims it is too small, and second, she contends that it was error to order that maintenance be terminated on April 1, 1985.

There are seven factors to be considered in arriving at a just maintenance award § 452.335. After considering these factors and the record we do not believe that the trial court abused its discretion in awarding $100.00 per month maintenance. *In re Marriage of Vallroy*, 548 S.W.2d 857, 859 (Mo.App.1977). There was substantial evidence to support this award. *Carr v. Carr*, 556 S.W.2d 511, 512[2] (Mo.App.1977).

Regarding the termination of maintenance, we have held that an order to terminate maintenance is improper absent evidence indicating that the financial circumstances of the parties will change. *In re Marriage of Valleroy*, supra, 548 S.W.2d 857, 859[2]; *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501, 503[5] (Mo.App.1977). In this case, the evidence shows that the trial court ordered termination of maintenance to occur three weeks after the youngest child becomes 21 years old. Since a court may properly consider the fact that a spouse was granted custody of minor children as a circumstance going to the propriety of a maintenance award, *Goff v. Goff*, 557 S.W.2d 55, 57[3] (Mo.App.1977), we believe that it is also proper to consider emancipation of such children as a factor along with other factors to consider relative to a termination. The reason for this is that upon emancipation of minor children the spouse with custody is also "emancipated", that is, he or she is free to devote time to a job outside the home once child-rearing responsibilities have ceased. Appellant is presently employed part time and the emancipation of the youngest child makes full time employment possible since she has a realtor's license. We believe there was substantial evidence to support the termination of maintenance, in view of appellant's skills, health, prospects for employment, the present earnings and capabilities of both parties, and other relevant factors. *In re Berkbigler's Marriage*, 560 S.W.2d 36, 39[2] (Mo.App.1977).

Finally, appellant claims the court erred by failing to order respondent to pay her attorney's fees which amounted to $1,000. The decree reads, "From the proceeds of the sale of the various items of marital property each party will pay their own attorneys fees and the costs of action will be taxed against respondent."

Allowance of attorney fees is a matter entrusted to the trial court's discretion. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 859 (Mo.App.1977). We inter-

fere with its judgment only upon a finding of abuse of discretion. *Barnhill v. Barnhill*, 547 S.W.2d 858, 860[6] (Mo.App.1977). The circumstances of both parties, including the ability of the husband to pay, are factors to be considered. *S. G. E. v. R. L. J.*, 527 S.W.2d 698, 703[6] (Mo.App.1975). The facts here show that respondent does not have greater resources than appellant. After his payments to her of child support and maintenance, he has $400 reserved per month for his other expenses, and is running a deficit of about $300 per month. Although appellant has limited resources we cannot allow her attorney fees to be charged to her former husband, without a showing of his ability to pay. *S. G. E. v. R. L. J.*, supra, at 704[8] (Mo.App.1975); *In re Marriage of C–S–B–*, 546 S.W.2d 186, 188[3] (Mo.App.1976). The denial of attorney fees was a proper exercise of discretion.

The judgment is affirmed except as to the finding that appellant's separately held shares in Hampton Bank and American Express shares and marital property and accordingly are set aside to her. Also, the judgment is ordered modified to give appellant credit at the time the home is sold for payments made after April 1, 1976 for insurance premiums and real estate taxes.

Judgment is affirmed in part, reversed in part, and cause remanded with directions to enter judgment in accordance with this opinion.

SIMEONE, C. J., and SNYDER, J., concur.