In re the MARRIAGE OF Barbara Ellen BREWER and Joe Gale Brewer.

Barbara Ellen Brewer, Petitioner-Respondent,

and

Joe Gale Brewer, Respondent-Appellant.

No. 11142.

Missouri Court of Appeals, Southern District, Division Three.

Dec. 28, 1979.

Ilooksllooks

James E. Reeves, Ward & Reeves, Caruthersville, for petitioner-respondent.

Wendell W. Crow, Ford, Ford, Crow & Reynolds, Kennett, for respondent-appellant.

PREWITT, Judge.

Appellant appeals from a judgment of dissolution of marriage. His complaints are to those parts of the judgment dividing the parties' property, granting child support, and awarding maintenance and attorneys' fees to respondent.

The parties were married on July 18, 1960. At the time of the trial, appellant was 41. Respondent's age does not appear in the record. They had two male children, ages 16 and 10, both in good health. The children were placed in respondent's custody. Appellant is a practicing dentist and respondent is a registered dental hygienist. She has not been employed since shortly before the marriage. In the early part of March 1978, appellant brought up the subject of dissolving their marriage. Appellant contended that the marriage had broken down because of a lack of marital sex, and rejection of his advances or their mere tolerance by respondent. These problems were not discussed by them before appellant proposed a divorce. He also complained of respondent's father referring to him by the name of the father's other former son-in-law and respondent's defense of her father's conduct. In discussions of a possible dissolution, appellant told respondent there was no one else then but that he was looking for someone to remarry. He made arrangements for an attorney to prepare a petition and separation agreement and to represent respondent in the dissolution proceeding. The provisions in the property settlement agreement were proposed by appellant. The petition for dissolution of marriage was filed on April 27, 1978. Appellant filed no responsive pleading and on June 6, 1978, the trial court found the marriage irretrievably broken and entered its decree dissolving the marriage, approving the property settlement agreement, and awarding respondent $175 per month child support per child. Respondent and appellant continued to live in the same house until the dissolution. Afterwards, as under the separation agreement, appellant received their residence, respondent and the children moved to a house purchased for her by her father. On June

**532**

10, 1978, appellant married Libby Walton, his receptionist of six years. She was 25 years of age. He had applied for a marriage license for them on June 2nd. Appellant and Libby denied that they were having an affair before appellant asked for a dissolution. He and Libby said they had not had intercourse or kissed before the marriage. They had discussed sex and he believed she could satisfy him. He testified he proposed to her after the dissolution petition was filed.

After that marriage, respondent engaged her present attorney, and on June 21, 1978, asked the court to set aside its judgment of June 6th. On July 3, 1978, the decree was set aside and a new decree entered. Appellant then secured his present counsel and moved the court to set aside the decree of July 3, 1978. On July 18, 1978, the decree of July 3, 1978, was set aside and the cause set for hearing. After trial, the court found the separation agreement unconscionable and awarded respondent substantially more than the agreement provided. Other facts which we consider relevant in our determination of the issues involved will be set forth in the course of the opinion.

Our review is governed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. In our review we give deference to the trial court's opportunity to have seen and heard the parties and to have judged their credibility. *Plattner v. Plattner*, 567 S.W.2d 139, 142 (Mo.App.1978). The trial court has broad discretion in dividing marital property and granting maintenance orders and we should not interfere unless an abuse of discretion appears. *In re Marriage of Galloway*, 547 S.W.2d 193, 195 (Mo.App.1977). The burden of demonstrating error in the judgment below is upon the appellant. *Naeger v. Naeger*, 542 S.W.2d 344, 346 (Mo.App.1976).

Appellant contends that the trial court improperly divided the parties' property and awarded maintenance and attorneys fees as this exceeded the relief sought in the petition. The petition requested the court to dissolve the marriage, grant custody of the children to the petitioner (respondent here), award her child support "and such further relief as to the court may seem just and proper." There was no question of jurisdiction over the parties and even if not requested, the trial court must divide the parties' marital property upon the dissolution of the marriage. § 452.330, RSMo 1978; *In re Marriage of Bradford*, 557 S.W.2d 720, 730 (Mo.App.1977). Appellant knew from the trial court's previous orders that respondent was claiming the relief before us now. At the trial there was evidence of the parties' property, standard of living, living expenses, vocation, and other economic circumstances. It appears that the parties tried the case as if the relief here questioned was in issue. Even if not within the scope of the petition, as these issues were tried, they are now treated as if they were raised in the pleadings. Rule 55.33(b), V.A.M.R.; *Hulsey v. Hulsey*, 550 S.W.2d 902, 903–904 (Mo.App.1977).

Appellant also contends that there was insufficient evidence of property values and other economic considerations for the court to grant the relief questioned here. It is true that the evidence was not developed as fully as would be preferred. The parties did not offer evidence on or know the value of certain marital assets. Other economic circumstances were only marginally developed. Appellant contends that due to his situation with "two wives", he was "coerced to agree to rush the hearing" and did not have time for discovery. Appellant announced ready for trial. While we understand appellant's predicament, it is our duty to finally dispose of this matter, if possible. Rule 84.14, V.A.M.R.; *In re Marriage of Schulte*, 546 S.W.2d 41, 45 (Mo.App. 1977). The parties have had an opportunity to present evidence and we think a reasonable disposition of this matter can be made on the evidence before us.

Appellant asked for findings of fact and conclusions of law and they were made by the trial court. Appellant complains, however, of failure of the court to make certain findings. Findings of fact are not necessary unless requested, and if there are no findings, we consider the facts as having been found in accordance with the result reached. *Smith v. Smith*, 552 S.W.2d 321, 322 (Mo.App.1977). No request for a finding of any specific factual issue was made. Rule 73.01.1(b), V.A.M.R., provides that the trial court "may, or if requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel." The rule further provides that for the purpose of appellate review of cases tried without a jury, "No findings of fact, except such as shall have been requested, . . . are necessary." Rule 73.01.2(a), V.A.M.R. Under this rule, the trial court cannot be convicted of error for not making findings which were not specifically requested. *First Florida Building, Inc. v. Safari Systems, Inc.*, 570 S.W.2d 728, 730 (Mo. App.1978).

We now consider the trial court's property division. Appellant contends that at the original hearing respondent testified that the property settlement agreement was fair and asked the court to approve it, and she should be "estopped from asserting to the contrary on discovery of respondent's remarriage." Section 452.325, RSMo 1978, requires the trial court to determine if the agreement is unconscionable. This is an express duty of the court; no matter what the parties' contentions are. What is fair and reasonable is a matter of opinion and opinions can change as circumstances vary. Respondent's original feelings were apparently partly based on certain representations made to her that no other person was romantically involved with her husband. She was also told by him that if she didn't sign the agreement, there would be a problem with the children. She said she signed the agreement because she had lived with him for 18 years and didn't want any problems. She had talked and talked and talked to him and he said there was no way that they could work it out, and that there was

no one else involved. He said if they did not get a "friendly divorce", the children would be hurt and he would be "ruined". Then she just "went along" with the figures given to her. The trial court found that his representations that no one else was involved were false. This we believe is supported by reasonable inference from the evidence. Whether or not under appropriate circumstances estoppel might apply, we need not determine, as under the facts here respondent was entitled to question the agreement, and the court was justified in finding it unconscionable.

It would have been difficult to make any other finding. In their 18 year marriage, the parties had accumulated, or at least had control of over $115,000 in assets. While some of their accumulation was by gifts from their parents, most of the gifts were received or placed in their joint names and would be presumed marital property. *Hebron v. Hebron*, 566 S.W.2d 829, 834 (Mo.App.1978). Respondent had not been employed during that period and appellant had a substantial income. Under the agreement she received no maintenance, $15,000, a 1976 automobile, and $175 a month per child as child support. No showing of improper conduct on her part was made or found by the trial court. The reasons stated by appellant for the breakdown of the marriage are suspect. The evidence showed that they had not discussed their sexual problems before he proposed a dissolution of their marriage and the other matters claimed by him seem trivial. Having found the agreement unconscionable, the court can then make orders for the disposition of property, support and maintenance. § 452.325.3, RSMo 1978.

Appellant contends that the trial court made a wholly disproportionate division of the property to punish him. Respondent received the family home of the parties, valued at $50,000. She also received most of the household furniture, a 1976 Pontiac, a screened room camper and $2,287 cash. The court allowed her to retain $12,000 paid by appellant's mother for

him under the property settlement agreement, apparently received before respondent learned of appellant's remarriage. Appellant received a 1966 Corvair, his dental equipment, a golf club membership, stock in the Dreyfus fund ($102.53 in dividends in 1977), some furniture, a riding lawnmower, camping and hunting equipment, a small amount in a savings account and an unknown balance in a checking account. The only values in evidence of the assets received by appellant are for the automobile, dental equipment and savings account and these approximate a total of $2,000. Also, appellant retained $55,000 in a time deposit certificate which came from gifts to the parties and their children from his parents. They apparently had given each of the four $3,000 a year for 4 years, which made a total of $48,000. With interest the money had grown to $55,000 at the time of trial. Appellant contends that allowing respondent to retain the $12,000 paid to her by his mother was improper, as respondent never made a claim to any part of the certificate. It was not paid from the certificate but was for her share in it. Her testimony was that she did not claim any part of the certificate, but she never conceded she should return the $12,000. When asked if she was considering that a part of the marital property, respondent said she was not asking for or claiming any part of it. She did not clearly admit that this was not marital property. After receiving their annual gifts, they were put in joint names with the parties and their children. The certificate is not in evidence and the exact manner in which it is held was not clear. However, at least a part would appear to be marital property. *Hebron v. Hebron*, supra, 566 S.W.2d at 835; *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo.App.1975). While she did not claim any part of those funds, the evidence is not conclusive that she did not consider them marital property. The trial court said that respondent was entitled to $12,000 of these funds as her separate property, but did not order it paid from the certificate. Appellant's mother had paid respondent $12,000 toward the property settlement agreement, apparently because a withdrawal from the certificate would cause a loss of interest, and that was applied by the trial court as payment of respondent's separate interest.

If the certificate of deposit is not viewed as marital property, but as the parties' separate property as the trial court found, then respondent would be entitled to her separate share and it would actually exceed $12,000. If all of the certificate is viewed as marital property, then there is over $115,000 in total assets; and it would certainly not be unreasonable to grant her a portion of this, as her share of the total assets would then approximate $70,000 and appellant's $45,000, if he has to pay back his mother the $12,000. If not, he has at least a total of $57,000 in marital assets and she $70,000. If one-half of the certificate, or $27,500, is marital property, then he receives $15,500 after her $12,000. This leaves him with marital property of at least $17,500, approximately what respondent would have received under the property settlement agreement that appellant thought was reasonable. Considering the circumstances here, her receipt of the $12,-000 in cash is not unreasonable however the certificate is viewed.

■ The principal asset acquired, other than the certificate of deposit, was the family home. The trial court, apparently considering § 452.330(3), granted that to respondent. The desirability of awarding the family home to the wife, together with other circumstances, might create a situation where the wife receives the bulk of the marital assets, but not be inequitable or an abuse of discretion. *In re Marriage of Vanet*, 544 S.W.2d 236, 241 (Mo.App.1976). There the wife apparently received 74% of the marital property and the husband 26%. We don't believe that because respondent indicated she might sell it, as her father had purchased her a home, makes this award erroneous. She was left without a house under the separation agreement. After 18 years of marriage, she should not be put back in her father's care. Appellant forced this situation upon her. We view it unreasonable on his part not to have allowed her

and the children to stay in the house, and the fact that she agreed to give up the house due to his improper conduct should not give him a basis to claim that the court erred. She might now determine to live in the family home and may sell her present house and reimburse her father or deed it to him.

In the last full year before the hearing, appellant had a net income of nearly $27,-000. Respondent, at the time of trial was unemployed, but had inquired about employment as a dental hygienist and had applied for a position as an associate teacher. The latter would pay about $22 a day. There was evidence that appellant could earn more if he chose to work more days a week, but also evidence that he had a health condition which might be aggravated from work pressures and prevent him from working at all. The trial court recited that it considered the factors in § 452.330, RSMo 1978, in dividing the property. It found that respondent had not been guilty of any misconduct contributing to the breakdown of the marriage. The court determined that appellant's testimony that he had neither kissed nor embraced nor had sexual relations with Libby Walton prior to June 10, 1978, was not credible and was unworthy of belief. It found that the cause of the marriage breaking up was appellant's misconduct with Libby Walton and that he misrepresented to respondent his reasons for wanting their marriage dissolved. Marital infidelity occurs frequently in cases before this and other courts. We view appellant's conduct as more serious than that. The trial court found that he concealed and misrepresented his relationship with Libby, which finding we believe was supported by the evidence. While concealing this information, he coerced respondent into signing an unfair property settlement agreement. When we consider the economic circumstances of the parties, their conduct and the other matters set forth in § 452.330, RSMo 1978, we cannot say that the trial judge abused his discretion or necessarily unduly emphasized appellant's conduct in his determination. The division of property was based on substantial evidence and was not an abuse of the trial court's discretion.

Appellant contends that the trial court erroneously awarded $400 in monthly maintenance to respondent. While each case must be determined on its own facts, in *Naeger v. Naeger,* supra, maintenance of $90 per week was awarded where a husband had similar income; and in *P. A. A. v. S. T. A.,* 592 S.W.2d 502 (No. 10595, Mo. App. Southern District 1979), this court, under similar circumstances, reversed a denial of maintenance and required the husband to pay $400 per month. Also see *In re Marriage of Vanet,* supra, where maintenance of $400 was awarded to the wife of a professional man whose income was somewhat less at the time of trial than here. We believe the evidence here showed that at the time of trial respondent did not have sufficient property to provide for her needs without soon disposing of the marital assets she received. She had not secured employment and had custody of two school age children.

A wife should not have to dispose of her assets or consume her part of the marital property for living expenses before she would be entitled to maintenance. *P. A. A. v. S. T. A.,* supra; *In re Marriage of Powers,* 527 S.W.2d 949, 955 (Mo.App.1975). Of course, if circumstances change, a modification could be appropriate. On the evidence before it, the trial court did not abuse its discretion in its award of maintenance.

Appellant also complains of the trial court's support award of $200 per month per child. The "Property Settlement Agreement" appellant had prepared provided that he was to pay $175 per month per child. There was evidence of a trust which had been set up by respondent's father for the children, and appellant claims the court did not have any evidence of the nature and extent of the trust. However, there was also evidence that the trust or trusts were contained in a will. This would only take effect upon his death and would not have any bearing on the present circumstances of the parties and the children. The trial court recited that it considered the factors

**536**

set forth in § 452.340, RSMo 1978. Based on the evidence here, we do not believe that we can say that the child support award was an abuse of the trial court's discretion.

Nor do we view the total of the monthly awards excessive when considering appellant's income. It has increased substantially in recent years and in his occupation will likely continue to do so. Similar awards of maintenance and child support where the income was similar were affirmed in *In re Marriage of Vanet*, supra, and *Naeger v. Naeger*, supra.

▮▮▮▮▮ Appellant contends that attorneys fees should not have been awarded and there was no evidence to support the court's determination of the value of the legal services rendered. Respondent had the means to pay her attorney but financial inability of the spouse to pay is not a requirement for awarding attorneys fees. The financial resources of the parties must be considered, as well as all relevant factors and only when the trial court is shown to have abused its broad discretion in this regard should its award be overturned. *Kieffer v. Kieffer*, 590 S.W.2d 915 (No. 61469, Mo. banc 1979). Evidence of the extent and value of the services is not necessary because a judge is an expert on the question of attorneys' fees and can fix the amount without the aid of evidence. *In re Marriage of Dillon*, 559 S.W.2d 81, 84 (Mo.App. 1977). Respondent's attorney had greater difficulty and responsibility coming into this case, where a decree had already been issued than he would have ordinarily. He must move to have that set aside and defend against a signed property settlement agreement. His success in respondent receiving three to four times more than she received before reflects diligent effort on his part. Much of the attorney's efforts were directed against actions created by appellant's improper conduct. We do not feel that the trial court abused its discretion in this award.

The judgment is affirmed.

MAUS and GREENE, JJ., concur.

BILLINGS, P. J., recused.