John B. COLABIANCHI, Respondent,

v.

Margaret T. COLABIANCHI, Appellant.

No. 63822.

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

David C. Godfrey, Clayton, for appellant.

Robert F. Summers, Clayton, for respondent.

RENDLEN, Chief Justice.

Appealing from a decree of dissolution, appellant cites as trial court error: (1) entry of an order of dissolution rather than decree of legal separation, (2) failure to award wife the family home or require husband to pay share of taxes, insurance and maintenance costs, and (3) inadequacy of child support and maintenance awards.

1. 1977 Mo.Laws 629.

The Court of Appeals, Eastern District, affirmed but transferred the cause to be determined here as though on original appeal.

The parties, married in 1954, had five children, age 14, 19, 22 and twins age 23 at the time of trial. Following their separation in 1980 the husband petitioned for dissolution of the marriage alleging the marriage was irretrievably broken; in her cross-petition for legal separation, the wife also stated under oath there was no reasonable likelihood the marriage could be preserved, and it was therefore irretrievably broken. Neither alleged misconduct on the part of the other.

Two days after a hearing in February 1981 at which both parties testified the marriage was irretrievably broken, the trial court entered a decree of dissolution. Custody of the only minor children, 19 year-old Thomas and 14 year-old Janet, was awarded to the wife, and the husband was ordered to pay $30 per week support for Janet, approximately $100 per month for Janet's tuition at private school, one third of the mortgage payment (approximately $40 per month) on the family home, $300 per month maintenance and $500 for his wife's attorney fees. The court found that Thomas "is employed at the present time and is not in need of an order of support."

Review of this court-tried case is conducted under Rule 73.01 and the decree will be sustained unless the record reveals no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Due regard will be given to the trial court's ability to judge the credibility of the witnesses.

I

The trial court under the requirements of § 452.320.1 as amended in 1977[1], entered an order of dissolution. That section provides in relevant part:

1. If *both of the parties by petition* or otherwise have stated under oath or affirmation that the marriage is irretrievably broken, or *one of the parties has* so stated and *the other has not denied it,* the court, after considering the aforesaid petition or statement, and after a hearing thereon shall make a finding whether or not the marriage is irretrievably broken *and shall enter an order of dissolution or dismissal accordingly.* (Emphasis ours.)

Consistent with the above statute are the provisions of § 452.305.1 RSMo 1978, which mandate:

1. The circuit court *shall* enter a decree of *dissolution* of marriage if

.　　.　　.　　.　　.

(2) The court finds that there remains no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken; . . .

However, appellant submits that by the terms of § 452.305.2 enacted in 1973, the Court was required to enter a decree of *legal separation,* the relief prayed in her cross-petition. That subsection provides:

2. If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form.

She cites *McRoberts v. McRoberts,* 555 S.W.2d 682, 683–4 (Mo.App.1977) for the proposition that it is error under said subsection to order dissolution when either party requests a legal separation.[2] This contention must fail because to the extent that § 452.305.2 is contrary to the later enacted provisions of § 452.320.1 the latter prevails. Where there are two acts on one subject, both should be given effect if possible, but if they are repugnant in any of their provisions, the later act, even *sans* a specific repealing clause, operates to the extent of the repugnancy to repeal the first. *City of Kirkwood v. Allen,* 399 S.W.2d 30, 34 (Mo. banc 1966). *See also State on Inf. of Taylor v. American Insurance Co.,* 355 Mo. 1053, 200 S.W.2d 1, 14 (Mo. banc 1946) and *State ex rel. Armontrout v. Smith,* 353 Mo. 486, 182 S.W.2d 571, 574 (Mo. banc 1944), and this is true though the law does not favor repeal by implication. Hence § 452.320.1, not § 452.305.2, was controlling of the trial court's action and the cited cases construing that subsection are not dispositive of the issue before us. Appellant's contention is denied.

## II

According to the parties' financial statements, they possessed the following marital property:

|  | Value | Amount Owed |
|---|---|---|
| Family home | $51,200 | $1,800 |
| 1978 Ford Fairmont | $ 3,025 | $1,996 (on 1/1/81) |
| 1968 American Motors Rebel | Unknown | $ none |
| 81 shares IBM stock | $ 5,095 | $ none |
| U.S. Savings Bond | $ 50 | $ none |
| Insurance policies on husband (face value) | $57,529 | $ none |
| Insurance policy on wife (face value) | $ 1,000 | $ none |
| Household furnishings | Unknown | $ none |

In the decree of dissolution, most of the household furnishings were awarded to the wife, and each party was given his or her own insurance policies ($57,529 to the husband on his life and $1,000 to the wife on hers). The husband who testified to the

---

2. It is not noted in *McRoberts* whether both parties stated the marriage was irretrievably broken, but, in any event, the case was tried before the effective date of § 452.320.1, RSMo 1978. *McRoberts* was followed by the Court of Appeals, Western District, in *Smith v. Smith,* 561 S.W.2d 714 (Mo.App.1978) and by the Court of Appeals, Eastern District, in *Weibert v. Weibert,* 632 S.W.2d 86 (Mo.App.1982). In both *Smith* and *Weibert,* however, one party denied the marriage was irretrievably broken. In neither *Smith* nor *Weibert,* however, did both parties state under oath the marriage was irretrievably broken or did one so state and the other fail to deny it. In both cases, one party denied the marriage was irretrievably broken, so neither case presented the question raised here. Appellant also cites *Rojas v. Rojas,* 595 S.W.2d 729 (Mo.App.1980), an appeal from a judgment converting a decree of legal separation to a decree of dissolution, in which the Court of Appeals, Western District, opined that despite amended § 452.320.1, the trial court did not err in granting a decree of legal separation though both parties stated under oath their marriage was irretrievably broken. *Id.* at 733. To the extent *Rojas* conflicts with this opinion, it is not to be followed.

need for a car in his work, was awarded the 1978 Ford automobile, subject to a $1,996 mortgage, and 41 shares of IBM stock. The wife was awarded 40 shares of stock, the $50 savings bond and the 1968 AMC Rebel. The wife was given the right to live in the family home for six years, until she remarried or until none of the minor children was living there with her, whichever occurred first, at which time the house is to be sold and the proceeds divided equally between husband and wife.

The three-bedroom family home was purchased in the mid-1950's for an undisclosed amount, with a $3,000 down payment from the wife's profit sharing plan. Over the years, monthly mortgage payments were made from the husband's salary. At the time of trial, the house had an estimated value of approximately $51,000, subject to a mortgage of approximately $1,800. Monthly mortgage payments amounted to approximately $120, of which the husband was ordered to pay one third, and the wife two thirds. The mortgage was scheduled for retirement in a year and a half.

When the parties were married in 1954, the wife worked full time. Shortly before the birth of her first children (twins), the wife terminated her employment and received approximately $5,000 from a profit sharing plan. Approximately $3,000 was used as a down payment on the home, and approximately $2,000 was used to purchase a family automobile. For the next 22 years, the wife remained at home raising the couple's children.

In 1979, the wife obtained employment as a part-time receptionist. When her husband left, she took a second part-time job as a secretary. At the time of the hearing, her weekly take home pay for 45 hours work was approximately $100, or $430 per month. The wife was awarded custody of the two minor children, 19 year-old Thomas and 14 year-old Janet. At the time of trial, the wife was at least 49 [3] years old and claimed to be suffering from chronic liver disease and high blood pressure.

The husband is 50 years of age and has been employed by a major company since 1957. At the time of the hearing, his take home pay was $1,864.58 per month. In addition to his salary, the husband received a mileage allowance, group medical insurance for himself and his family (children to age 19), group life insurance, stock and bond purchase plans and a retirement plan.

The wife contends that failure of the trial court to award her the family home was an abuse of discretion in light of her age, health and economic circumstances.

■■■■ The Dissolution of Marriage Act leaves the division of marital property to the sound discretion of the trial court, and its decision should be upheld unless an abuse of discretion is shown. *In re Marriage of Cornell,* 550 S.W.2d 823, 826 (Mo. App.1977). When dividing such property (in such proportions as the court deems just) the trial court must consider "all relevant factors," including: (1) the contribution of each spouse to the acquisition of the marital property, as well as the contribution of a spouse as homemaker, (2) the value of the property set apart to each spouse, (3) the economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children, and (4) the conduct of the parties during the marriage; Section 452.330, RSMo 1978 (applicable at the time of trial). A review of the evidence in light of these factors does not convince us failure to award the family home to the wife constituted an abuse of discretion. The contributions of the parties to the acquisition of marital property were comparable; there was no allegation of misconduct on the part of either; there was no separate property to set apart; the wife was awarded custody of two minor children, but her need for a three bedroom home will decline when the children are emancipated.

---

**3.** The record does not reveal the wife's age but states she was a Missouri resident for 49 years preceding the filing of the petition.

These facts persuade us the approximately equal division of marital property with the right in the wife to live in the family home for a maximum of six years[4] was within the trial court's discretion.

■ Because the wife is awarded the right to live in the home, we cannot say the trial court's apportionment of one third of each mortgage payment to the husband and two thirds to the wife constitutes an abuse of discretion. However, the wife contends the court erred in failing to order the husband to share in payment of taxes, insurance and maintenance costs of the family home until it is sold. Given the economic circumstances of the parties, the equal distribution of the proceeds upon sale of the home and the mutual benefit to be obtained from such expenditures, it seems to us the expenses of taxes, insurance and reasonable maintenance should be shared. *Compare Hebron v. Hebron*, 566 S.W.2d 829, 834 (Mo.App.1978). Hence, we order that the husband is to pay one third, and the wife two thirds of the cost of taxes and insurance on the home until it is sold and, considering the relative economic circumstances of the parties, the husband is ordered to pay three fourths and the wife one fourth of the cost of reasonable maintenance of the home until it is sold.

Finally, the wife points to an apparent conflict between the Eastern and Western Districts of the Court of Appeals on the disposition of marital property. In the Eastern District, ownership of marital property such as the family home in this case is allowed to remain as a tenancy in common after dissolution until the property's disposition by sale. *See In re Marriage of Heddy*, 535 S.W.2d 276, 281 (Mo.App.1976) and *Murray v. Murray*, 614 S.W.2d 554, 555–56 (Mo.App.1981). In the Western District, it has been said that unless there is evidence necessitating the continuation of a tenancy in common, tenancy of real estate involved in a divorce proceeding should be divided at the time of dissolution. We are cited to *In re Marriage of Pine*, 625 S.W.2d 942, 945–46 (Mo.App.1981), in which the Court of Appeals, Western District disapproved an order similar to that in the case at bar and directed the trial court to vest title to the residence in the wife with a lien in favor of the husband. Crucial to the decision in *Pine*, however, was the court's conclusion that the trial court intended an equal division of property but under all the facts in that case erroneously awarded the husband $10,000 more than the wife, facts not occurring here. We are not persuaded the trial court's disposition of property in this case stands contrary to the law as interpreted by previous appellate decision and the contention is denied.

### III

The trial court awarded custody of Thomas, age 19, to the wife but decreed he was "employed at the present time and . . . not in need of an order of support." The evidence showed Thomas was working full time, but did not, the wife contends, indicate the extent of his needs or how much he was earning. She avers that without this evidence, the trial court erred in refusing to grant support, and the cause should be remanded for further development of the record on the financial needs of the child. We disagree.

■ There was testimony Thomas was making a "little bit more than the minimum wage" at a job located two blocks from his home and that his room and board were provided by his mother for $50 a week. Absent a showing of emancipation, of which there is no claim in this case, the obligation of a parent for child support does not terminate until the child reaches age 21. *Biermann v. Biermann*, 584 S.W.2d 106, 107 (Mo.App.1979). This does not mean, however, that under all conditions and circumstances, a court must require the father to contribute to the support of the son merely because he is under 21, *Thomas v. Thomas*, 238 S.W.2d 454, 455 (Mo.App.1951), and

---

4. Six years after the court's decree, the younger child will be within one month of her 21st birthday.

child support awards are discretionary with the trial court. *Oberkrom v. Oberkrom,* 608 S.W.2d 449, 450 (Mo.App.1980). A review of the evidence in light of the factors enumerated in § 452.340, RSMo 1978, which include "the financial resources of the child," reveals no abuse of discretion in failing to order support for Thomas. *Compare In re Marriage of Berkbigler,* 560 S.W.2d 36, 39 (Mo.App.1977), in which denial of child support for a partly-employed 19 year-old child working 20 to 40 hours a week and earning $2.25 per hour was upheld.

## IV

■ It is next contended the trial court erred in ordering the husband to pay only $30 per week support for 14 year-old Janet and $300 per month maintenance. The trial court has broad discretion in determining the amount of maintenance, *In re Marriage of Brewer,* 592 S.W.2d 529, 532 (Mo.App. 1979), and child support, *Roberts v. Roberts,* 592 S.W.2d 860, 862 (Mo.App.1979), and we will not interfere absent an abuse of discretion.

■ The wife's salary was approximately $430 per month at the time of the hearing. All five of the children were living in the family home; three were working and each paid their mother $50 per week, a total of $650 per month, for room and board. The husband was ordered to pay to the wife $300 per month maintenance and one third of each mortgage payment (approximately $40 per month). The wife listed monthly living expenses of $724. Monthly expenses for the fourteen year-old daughter were listed as $300 plus $100 tuition at private school. The husband was ordered to pay $130 per month child support and the private school tuition.

The husband's take-home pay was $1,864.58 per month. His monthly expenses totaled $1,770, which included the $570 support payment, $996 living expenses and $202 monthly payments on nearly $5,000 in loans obtained during the marriage. The loans included a $1,996 encumbrance on the 1978 Ford Automobile awarded to the husband, $1,458 borrowed to pay attorney's fees incurred during the dissolution, $500 for private school tuition, and approximately $800 in consumer loans.

Reviewing these facts in light of the factors enumerated in §§ 452.340 and 452.335, RSMo 1978 for determining a "just" amount of maintenance and the amount "reasonable or necessary" for a child's support, balancing the needs of the wife and child seeking support against the ability of the husband to pay, and considering our determination that the husband be ordered to pay one third of the cost of taxes and insurance and three fourths of the reasonable maintenance of the family home until it is sold, we cannot conclude the support orders in this case are otherwise so inadequate as to constitute an abuse of discretion.

The judgment is affirmed in all particulars except as to tax, insurance and reasonable maintenance payments on the family home, and the cause is remanded for entry of judgment consistent with this opinion.

HOUSER, MORGAN and SEILER, Senior Judges, concur.

WELLIVER and DONNELLY, JJ., dissent in separate opinions filed.

HIGGINS, J., not sitting.

GUNN, BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.

WELLIVER, Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the trial court in all respects under the principles set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

DONNELLY, Judge, dissenting.

The majority cites *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976) and then proceeds with a *de novo* review.

In my view, the Bench and Bar of Missouri deserve a straight-forward statement as to the viability of the *Murphy* standard of review. The *Murphy* standard is a result

of a collective effort in 1976. It was intended to give "a sense of direction * * *." As is evidenced in this case, and many others, it has not served its purpose.

In this unfortunate circumstance, I must urge that *Murphy* be overruled.

I respectfully dissent.